Case in the morning, 3-13-0689-WC, Waste Management of Illinois v. Workers' Compensation Commission, Scott Armstrong. May I have your attention? Yes, you may. May it please the courts, Mr. Elder, good morning on earth. My name is Matt Novak. I'm the attorney for the appellant, Waste Management. Today, as you can see from my brief, I've outlined four issues for your consideration. Primarily, the issues of whether notice was timely received by the commission, and whether this was such an accident, and whether there was employment and whether there was an employer-employee relationship on the date of accident. The first issue is outlined in my brief, and the first issue I'd like to address today in argument is the issue of notice. Essentially, the issue is whether the commission's finding on the issue of notice is either contrary to law or against the manifest way to the evidence, in particular as to whether the respondent, Waste Management, received notice within 45 days of the alleged accident date. I won't go into detail. I'm sure the court is well-versed on the law regarding notice in the jurisdiction requirement, providing notice within 45 days, so the court should skip straight to the analysis of the facts and the issues at hand. The petitioner alleges accidental injuries while working for Waste Management on July 9, 2010. He alleges he provided notice within 45 days of that alleged accident date. The only evidence regarding notice, which was disputed at trial, is the application of the claim, which is Archives Exhibit No. 2. So the proof of service section of the application, undated, you know that, correct? Correct. It states the document was placed in the mail to Waste Management at its headquarters at 4.30 p.m. As recognized by the arbitrator in the commission, the status sheet reflects a notice dated to the parties of July 28 that sets an upcoming status hearing. Did Waste Management ever affirmatively state it did not receive the commission's July 28 notice, or that the address on the application was the wrong business address? Well, I think what controls that issue is the request for hearing form. On the request for hearing form, the respondent does state it did not receive notice within 45 days. So even though, obviously, the commission got it, set a date, and acted upon it, we're to infer that they probably never got it. Are you exalting form over substance here? I don't think so, Your Honor. I think what I'm asking for is a look at the evidence and whether there's evidence in the record that supports the conclusion that the respondent received the application within 45 days of the accident. And I think if you review the entire record, there is actually no evidence that says the respondent received notice within 45 days. Well, it occurs to me that if you didn't receive notice, you would have said so, and you would have put her under oath, filed some type of a pleading saying we never got notice. The only thing you did was said, in essence, is saying plaintiff can't prove you gave me notice, but without affirmatively denying you ever got it. Well, I did. You did or didn't you? Yes or no? Do you know? I do not personally know. I mean, I think so. But I think what controls is the request for hearing form. Those are the stipulations on the issues between the parties. So if we stipulated to receiving notice, then there wouldn't be an issue here. But we denied that we received it within 45 days. You put it as an issue in controversy that the district had approved. Yes, exactly. You never denied you got it. And the reason why you did it is because there was no date on the mailing. And so you figured if there's no date on the mailing, this guy can't prove he sent us notice. We're going to raise the issue of notice without ever denying that you got it. And that's like checking and raising the card. That's not fair. Either you got it or you didn't. And you owe us an honest answer as to whether you did or didn't. And your answer is you don't know? The answer is I don't know. I was in the original trial attorney. In fact, I was in the original appellate attorney. I wasn't present at the beginning of the case. We know the facts on the issue. But do you understand Justice Hoffman's outline here? Do you have a disagreement with that? Well, are you asking me to represent as an officer of the court as to whether I know? No, no, no, no, no. You've answered that question. But the analysis, his view of the check and raise concept. So if I understand the analysis, the response should have come forward saying, Hey, look, we never received this application within 45 days. We should have presented evidence. Yeah, exactly right. You should have said we never got this application. We never got this notice. And put the plaintiff to the proofs of saying you did get it or somehow you did get it. But what you did was turn around and, in essence, said, by making it an issue, on the hearing form, and said, Mr. Plaintiff, prove we got it. Because we know that there's a defect in the mailing affidavit. So prove to us we've got it. Which is almost impossible for him to do because, obviously, he doesn't work for waste management. All you had to do was file a pleading under oath by one of your people saying, We never got this notice. And you never did. And that's just not fair. You know, and that issue came up at the circuit court, is whether the respondent could have come forward and presented evidence to say they didn't receive notice. And my response then and my response now is that it was the petitioner's initial burden to prove that he received or that he gave notice within 45 days. And there are potential ways he could have done that. I mean, you know, Mr. Armstrong, the petitioner, did work for waste management for a long time. He obviously knew the people involved. And if there was an issue as to whether they ever received it, he could identify potential witnesses and brought them in to testify to prove that he received notice. That's part of his burden of proof moving forward. I just don't understand your argument. Is the notice argument your strongest argument? I believe it is a strong argument. I don't know if I could really weigh it as my strongest argument. You have something else, though, in terms of your brief, in terms of argument. And that's the manifest way of the argument. Well, the manifest way of the evidence as it pertains to the issues of causal connection, as it pertains to an accident, as it pertains to an employer-employee relationship on the alleged date of accident. So would you like me to address those arguments? It's your argument. Okay. Well, I'll get there. But essentially on the issue of notice, I do think it was the petitioner's burden of proof moving forward to establish that the respondent received notice within 45 days. There are a number of ways in the case law that shows that it can be done. The simplest act is the petitioner testifying, hey, I called my employer on this date and I told him I had an accident. In this case, the application had been mailed with a certificate of service requested so that you had a return receipt card showing that the respondent received it. But this evidence, at least on this record, there's no evidence establishing that the application was mailed to the correct address, that the respondent received it, or that the post office even delivered it. And yet the commission found that it was sufficient, correct? The commission found that it was sufficient. Well, what does the proof of service section that he signed say? It states that the document was placed in the mail to Waste Management at 3552 East Washington Street, East Peoria, at 4.30 p.m. And that was received by the commission on July the 26th, 2010. But to respond to that, the certificate of service does not list both Waste Management and the commission as being mailed to the same date at the same time. Well, the commission got it on July the 26th, 2010. It was signed by the claimant and his attorney on July the 15th, 2010, received by the commission on July the 26th, 2010, and the proof of service section said that it was mailed to Waste Management. Their initial status sheet reflects notice date to the parties July 28th, 2010. Sets a hearing date. And regarding the initial status sheet, that is not in the record. And I don't know why or how the commission could cite something that's not in the record. It's not made an exhibit. It's their status sheet. It's their internal record, isn't it? Can't they take judicial notice? I can't take judicial notice of pleadings. Well, section 1.1E of the Act states that the commission's decision must be based upon evidence in the record and, of course, things that are officially noticed. But that was not officially noticed during the hearing, and that was my position. Do they have to tell you they officially noticed what's in their own record? It's sitting there in front of the arbitrator. You've got it right there. I would believe so. So the attorney's certificate said it was sent to Waste Management, correct? Yes. At an unknown date. Right, so if you send a notice out from your law office and the other site says they never got it, your certificate would be worthless, right? No. Because that's the difference between this and that. Well, in that situation, you have two parties who filed an appearance, and they have their addresses on record at the commission. And the commission has established in its rules the appropriate way to send notice of pleadings to other parties. So if you follow the rules as established by the commission and you have the parties who have already filed their addresses with the commission, I think that there is a presumption that the parties would have received it. All right. Again, I think we understand the issues. What's your argument on manifest rape? In terms of the other issues, cause of connection? Okay. Well, the petitioner's case is essentially a repetitive trauma claim and injury to his left shoulder. He chose the manifest date of July 9, 2010. This manifestation dated six months after his employment ended with mace management and six months after his employment began with period disposal. So there's no dispute that when the petitioner went from waste management to working for period disposal, his job duties remained the same. There wasn't a lighter who was the same. Okay? And that's when he decides to seek medical treatment. There's no doubt that petitioner's accident manifested itself while he was working for period disposal, performing the exact same job duties as he did for waste management. Now, to establish... Which all makes some sense and has some intuitive appeal. We also know it's undisputed he worked for waste management for over 11 years, correct? Correct. Spent 50 to 60 hours per work, according to my notes, heavy lifting. And he began to experience shoulder problems in 2009 and possibly as early as 2003 while he was employed with waste management. And Dr. Below testified based on his examination of the records, the MRI. Rotator cuff likely occurred in the past year. And further, he testified in light of the reports over the years, pathology probably started during the period with waste management. That's what the doctor says. So is there not evidence in the record to support the commission's decision? Well, I have to take exception to characterizing Dr. Below's testimony in that way because it's actually a little bit more refined. When he initially responds to a lengthy hypothetical question and the question is put to him, you know, doctor, did the work for waste management cause pathology in the petitioner's left shoulder? He answers, I cannot answer whether that work caused the rotator cuff kick. What I can tell you is that the work duties as described, and these are the same work duties for waste management for pure disposal, could aggravate the condition. So that was his response. In other words, work for both employers can aggravate this condition. Counsel, you know, you're falling into a trap that many attorneys fall into when dealing with medical opinions. Doctors can testify within a reasonable degree of medical certainty that a certain form of mechanism could cause the injury that the petitioner suffers from. They can't testify that it did because they weren't there to see it. So in other words, putting it to its simplest form, if a person shows up with a broken leg and he tells the doctor, I fell off a curb, the doctor can testify within a reasonable degree of medical certainty that falling off a curb can cause a broken leg, but he cannot testify to whether it actually did cause the broken leg. Now, what did Belos say? Belos said that the type of work this man did could cause this injury. Whether it did or not, I don't know, but he said it could. And the petitioner testified that all of this started in 2009 when he was working for your company, didn't he? He testified that the pain started in 2009 when he was working for waste management. However, he did not seek any medical treatment until 2010 after working six months for a pure disposal company. So essentially, if there's an ongoing – the way Dr. Belos described it is that there was an aggravation of an unrelated condition because he says the rotator cuff tear, he can't determine if it was related. Aggravation of an unrelated condition? Well, the pathology probably started during the period with waste management. Probably started. You don't know if it did, but it probably did, because in light of what he saw on the MRI and in light of the fact that the claimant reported escalating pain over the years going all the way back to 2009. I don't know if he says exactly that the pathology probably started. I think his opinion was that the work duties could aggravate this condition, which has an unknown allelogy. The condition is a rotator cuff tear. And that the work duties could aggravate the condition of the rotator cuff tear. So he has an ongoing aggravation for waste management until the end of 2009. Then that aggravation stops. But he starts up again while he's working for a pure disposal and continues to aggravate his condition all throughout 2010 until he needs medical treatment. 2010. That's when he first seeks treatment with Dr. – I forget the name of the primary care physician. It was July 5, 2010. So you're saying manifestation date is the date of the injury and it was with PVC, not waste management. And that's another part of my argument, yes. If there's no further questions, I reserve time for rebuttal. Thank you. We're back. We have time for rebuttal. Mr. Elder, you may respond. Thank you. May it please the Court, opposing counsel, my name is Kevin Elder. I represent the injured worker, Scott Armstrong. For the most part, I'm going to stand on my brief, but I felt like I should briefly address the issue of notice since that's what respondents seem to focus on. Why don't you address the last thing? I just summarized it. Why is PVC here? Why is waste management getting tagged and not PVC? I think because of things that the Court mentioned in questions. My client worked for 11 years for waste management. That's when his problems began. That's what he attributes the problems in his shoulder to. Does the medical evidence, does BELO support that it probably happened during waste management's tenure? Dr. BELO noted that the symptoms started during that time and that the pathology had probably existed for less than a year. That was his precise testimony. And I will be the first to admit that Dr. BELO's testimony isn't perfect. I don't get to put words in his mouth. I think the necessary inferences and testimony are there to support the arbitrator's award and the Commission's decision putting it on waste management. For other reasons, Mr. Armstrong did not want to file a claim against his new employer, one of which is he didn't feel that their work had really caused the problem because he knew that he came into it with a bad shoulder.  while he was employed with waste management. Yes, sir. Well, but the doctor, we've got a... He was with PDC, what, six months? About six months, Your Honor. Six months, and so you've got a doctor that says within a year, correct? Correct. So it could have been those six months with PDC is a reasonable inference as well, right? It could have been, Judge, but I think... Because the manifestation date is with PDC. That's absolutely right, Judge. I think when you put Dr. Belos' testimony together with the lay testimony from Mr. Armstrong when he says that his symptoms started the previous summer and lasted throughout his work there, I think that's when you're able to conclude that the activities at waste management were the most responsible. As to the issue of notice, just real quickly, it was a defective notice on my part, not dating the affidavit. Trust me, I never make that mistake again. I'm very careful about that. But we have defective notice. We know that it got to the commission. We know that the commission understands how their system works. They had 30 days to get a notice back out to waste management with their status sheet. The status date was July 28. The accident date was July 9. His point is, yeah, they went to the commission, but how do we know waste management got it? Well, for the service of applications, I'm not required to have them serve with a process server. I use the form of the commission, and it's regular mail, and then they send out notice to everybody. But the thing that I want to remind the court is that under Section 6C with notice, even if there's a problem in the notice, they still have to show that there was some prejudice to their ability to investigate this. There was absolutely no showing of any prejudice by the defective notice. No, it only shows prejudice if the notice is defective. If there is no notice at all, that's jurisdictional. Then there's no prejudice required. You're absolutely right, Your Honor. And I think in this case, between my undated affidavit of service and the commission's own forms, and using common sense, that's the way that the commission decided that there should have been notice. So I think then it becomes defective notice because of my failure to date the affidavit, and then I think they have to show prejudice, and they didn't show any prejudice. On the other issues, I won't belabor the point except to say that they didn't offer any medical expert testimony, they didn't offer any lay testimony, so I think there's plenty of evidence in the record to support the decision of the arbitrator and the unanimous commission on review. Thank you, Mr. Elbert. Mr. Novak, you may reply. Mr. Novak, I found Dr. Vilo's testimony. He stated, my quote, starting started during that period with waste management and then carried on through to Peoria. That was his exact quote. Yeah, that's essentially the last answer he gives in the testimony, correct. And I read that to say that he has an aggravation starting with waste management, but the aggravation continues on with Peoria disposal. So my position is that if he has a continuing aggravation with Peoria disposal, the injury, the accident, the time where it probably breaks down and he needs medical treatment, is due to the employment with Peoria disposal. Because there's no doubt in his testimony, Dr. Vilo says that the employment with Peoria disposal could have caused pathology in the shoulder, requiring treatment, including surgery. No further questions. Thank you. Thank you, counsel, both for your arguments. This matter will be taken under advisement, written disposition shall issue.